**Meredith Trent CREEKMORE**

v.

**ATTORNEY GENERAL OF TEXAS, Sheriff of Jefferson County, Chief of Police of the City of Beaumont, and Thomas A. Davis, in his official capacity as the director of the Texas Department of Public Safety**

No. 1:00–CV–264.

United States District Court,
E.D. Texas,
Beaumont Division.

March 30, 2001.

---

Robert Charles Griffin, East Texas Legal Services Inc, Shimon Kaplan, East Texas Legal Services, Beaumont, TX, for plaintiff.

Robert B Maddox, Attorney General's Office, Law Enforcement Defense Division, Austin, TX, Richard F Baker, District Attorney's Office, Jefferson County, Dean Jerome Johnson, City of Beaumont, Beaumont, TX, for defendants.

## OPINION REGARDING MOTIONS TO DISMISS PROCEDURAL DUE PROCESS CLAIMS

HINES, United States Magistrate Judge.

Before the court are motions to dismiss by defendants Hon. John Cornyn, Attorney General of Texas, (Docket No. 10), Col. Thomas A. Davis, Director of Texas Department of Public Safety, (Docket No. 17), and Chief of Police, City of Beaumont, Texas, (Docket No. 20). By separate order entered this date, the court granted those motions and dismissed plaintiff's cause of action alleging deprivation of procedural due process of law. Plaintiff's remaining claims shall remain pending for decision.

This opinion states the court's analysis and reasons supporting its decision.

### I. Nature of Case

The nature of this action, and the state and federal statutory frameworks within which the current controversy arises, were reported previously. *See Creekmore v. Atty. Gen. of Texas. et al.*, 116 F.Supp.2d 767 (E.D.Tex., 2000). Information and record citations contained in that decision are not recounted here except when necessary for proper understanding and clarity.

For present purposes, it suffices to say that the plaintiff challenges the Texas Sex Offender Registration Program ("the Program")[1] on several constitutional grounds. The primary attack relies on an allegation that this Texas law—as applied to plaintiff—violates his right to procedural due process of law. Plaintiff seeks only declaratory and injunctive relief.

### II. Factual Background[2]

The plaintiff, Meredith Trent Creekmore, was a member of America's armed forces and stationed at Fort Sill, Oklahoma. During the period between January 1, 1993 through July 31, 1995, in order to satisfy what he called "urges," he committed a series of sex offenses. The victim in each instance was his minor daughter who was only two years of age when the offenses began and not yet four when they ended.

Creekmore was charged with multiple offenses, including rape, in violation of the Uniform Code of Military Justice (UCMJ). Pursuant to plea bargaining, however, the rape charge was reduced to an allegation of indecent assault. Creekmore then pleaded guilty at a general court martial to one count (specification) of indecent assault and four counts of indecent acts with a child.[3] He received a sentence of six years in custody of the United States De-

---

1. *See* TEX. CODE CRIM. PROC. ANN. art. 62.01 et seq. (Vernon's Supp.2000).

2. This opinion adopts the version of facts advocated by plaintiff, or as reported by defendants without opposition. *See Kaiser Aluminum & Chem. Sales. Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982) (stating that when the court considers a motion to dismiss, it must accept as true all material facts alleged in the complaint as well as any reasonable inferences to be drawn from them).

3. The record contains a verbatim transcript of a portion of the guilty plea proceedings at Creekmore's general court martial. To establish a factual basis for his pleas, Creekmore testified.

Regarding the four specifications alleging indecent acts with a child, Creekmore admitted with regard to Specification 1 that between January 1, 1993, through November 30, 1993, on more than one occasion, he placed his finger on the vaginal area of his daughter to gratify his lust. With regard to Specification 2, Creekmore admitted that dur-

partment of Justice, Bureau of Prisons (BOP).

Creekmore satisfied this sentence after serving a term of three years and ten months incarceration. He was released from the Federal Correctional Complex in Beaumont, Jefferson County, Texas. Upon release, he continued to reside in Beaumont.

In compliance with federal law, BOP officials notified Creekmore in advance of his release from prison that he would be subject to registration in Texas as a sex offender.[4] BOP further notified state and local law enforcement officials of Creekmore's release and his status as a sex offender subject to registration under state law.

Creekmore was released from federal prison on December 23, 1999. He ignored BOP's instructions to register with state officials after release. After a little more than a month, a Jefferson County sheriff's office employee by formal letter notified Creekmore that he was required to register. The letter set a deadline for compliance and advised that continued refusal to comply would constitute a third degree felony punishable with state jail time of up to ten years.[5]

Creekmore registered under protest. He alleges that local officials advised him

---

ing the period of January 1, 1993, through November 30, 1994, that he penetrated the vagina of his daughter with his finger about half an inch with intent to gratify his lust. He stated that his daughter displayed a facial expression that this action made her uncomfortable. With regard to the third specification, Creekmore admitted that during the period of January 1, 1993 through January 30, 1994, he rubbed his daughter's vaginal area with his erect penis to gratify his lust. With regard to the fourth specification, Creekmore admitted that during the period December 1, 1994 through March 31, 1995, he again penetrated his daughter's vagina with his finger with intent to gratify his lust.

Regarding the single specification of indecent assault, Creekmore admitted that during the period July 1—31, 1995, he did bodily harm to his daughter by pulling off her panties, putting his penis between her legs, rubbing his penis on her vaginal area for about two minutes while feeling resistance or pressure over the length of his penis, and continued to the extent that her vaginal area felt moist, all with intent to gratify his lust.
(See transcript of trial by general court martial, attached as exhibit to Plaintiff's Brief Regarding the Court's Subject Matter Jurisdiction, pages 19–33 (Docket No.42).)

4. The Wetterling Act constituted initial federal involvement in sex offender registration laws. See Creekmore v. Attorney General of Texas, 116 F.Supp.2d at 771 et seq. While its primary thrust was to browbeat individual states

into enacting and enforcing local sex offender registration laws by threatening to withhold federal highway funds, the role of federal agencies has since expanded.

The Secretary of Defense must now specify categories of conduct punishable under the UCMJ comparable to that requiring registration under the Wetterling Act and its progeny. Moreover, for persons sentenced by court martial, the Secretary is required to prescribe procedures consistent with those applicable to federal offenders generally for notice of release from confinement, informing offenders concerning their registration obligations, and tracking and ensuring compliance with registration requirements. 10 U.S.C. § 951 note (2000) (Offenses Against Minors).

Finally, if such military offenders are confined within a facility under control of BOP, federal prison officials must provide notice of the person's release and inform the person concerning registration obligations under procedures specified in Title 18 U.S.C. § 4042(c). Id.

5. Texas Code of Criminal Procedure art. 62.10 provides that a person who is required to register, but fails to do so commits a state jail felony of the third degree. Moreover, if that person is required to verify that registration every ninety days for the remainder of his life but fails to do so, he commits a state jail felony of the second degree. TEX. CODE CRIM. PROC. ANN. art. 62.10(a) & (b)(3) (Vernon's Supp.2000).

that his protest would be reviewed and decided by the Texas Attorney General within two weeks. However, no further action was forthcoming. Accordingly, he instituted this suit seeking a declaration that the Texas law is unconstitutional and an injunction preventing defendants from subjecting him to it.

Creekmore advances two procedural due process claims, both of which are simple and straightforward. First, he avers correctly that the Program requires him to register only if his UCMJ offenses contain elements "substantially similar" to the elements of certain listed Texas Penal Code offenses. He contends the Program is constitutionally infirm in this respect because (1) it does not indicate who determines whether an offense under UCMJ is substantially similar to a listed offense under the Texas Penal Code; and (2) it does not provide any process by which an individual determined to have a reportable conviction may challenge that determination.

Creekmore's second due process challenge goes to the provision that requires persons convicted two or more times of a "sexually violent offense" to register every ninety days for life. He contends the Program is constitutionally infirm in this respect because (1) it does not give clear notice as to when one is deemed convicted two or more times of an offense; and (2) it does not provide a process by which an individual determined to have been convicted two or more times of a sexually violent offense may challenge that determination.

### III. Motions to Dismiss

Defendants move to dismiss these claims under FED. R. CIV. P. 12(b)(6), advancing numerous grounds for dismissal. The only ground addressed here is the contention that Creekmore's procedural due process challenges fail as a matter of law because they do not implicate a constitutionally protected liberty interest. Defendants argue initially that their actions were and are proper. Apart from that, defendants contend that their actions amount to nothing more than stigmatizing conduct affecting Creekmore's reputation. Defendants invoke supreme court and governing circuit court of appeals precedent holding that harm to reputation and damage flowing from such injury, without more, do not constitute a constitutionally cognizant injury.

Creekmore responds that he alleges facts showing not only that defendants' statements are false and defamatory, but also that such statements will cause more than pure reputational damage. Essentially, Creekmore contends that defendants' assertion that he is required to register under the Texas Program is false because the elements of his UCMJ offenses are not substantially similar to the listed Texas Penal Code offenses. Further, Creekmore contends that defendants' statement that he must register every ninety days for life is false because he has been convicted only once for enhancement purposes. Finally, Creekmore contends that if defendants continue to publish these false statements, their actions will deprive him of more tangible interests than reputational harm, including (1)loss of a statutory right not to be labeled as a sex offender or a sexually violent offender unless he meets the statutory definition of the term; (2) loss of a right to sue for libel;[6] (3) Loss of the right to renew his

---

6. Texas Code of Criminal Procedure article 62.09 provides that an individual, agency, entity, or authority is not liable under chapter 101, Civil Practice and Remedies Code, or any other law for damages arising from the release to the public of information regarding a person required to register if the informa-

driver's license by mail for six-year periods;[7] (4) Loss of the right to move without giving prior notice to the government; and (5) Loss of the right to regularly visit another community without giving notice to the government.

## IV. Principles of Analysis

### A. Procedural Due Process Claims

Actions asserting deprivation of procedural due process involve a sequential analysis. The analysis begins with an inquiry into whether the challenged conduct affects a life, liberty or property interest protected by the Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). If so, the second step is to determine whether the level of process afforded to the plaintiff was sufficient, i.e., whether the right to due process was violated. This inquiry involves a three-pronged, balancing of interests articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, (1976).[8] Finally, when the level of process afforded was inadequate, the court must determine what additional process is due. Due process is a flexible concept, calling only for "such procedural protections as the particular situation demands." *See Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

### B. Stigmatizing Conduct

■ Special rules determine whether a constitutionally protected liberty interest is involved when state actors stigmatize another person. Damage to reputation alone does not implicate a protected liberty interest. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Nor does ensuing impairment of future employment opportunity. *Siegert v. Gilley*, 500 U.S. 226, 233–35, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *State of Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir.1995). Plaintiff must also show that such defamation will, with some degree of certainty, lead to loss of or injury to a more tangible interest. *Marrero v. City of Hialeah*, 625 F.2d 499, 513–519 (5th Cir.1980). This is sometimes referred to as the "stigma plus infringement" test. *See San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 701–702 (5th Cir.1991); *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir.1995).

■ To be sufficiently stigmatizing to satisfy the first prong of this test, a statement must be both false and assert serious wrongdoing. *See Kacal*, 928 F.2d at 701; *Blackburn*, 42 F.3d at 936. Thus, the first prong of the stigma plus infringement analysis further bifurcates into two components: falsity and serious wrongdoing.

### 1. Falsity

Falsity was addressed in *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). The Supreme Court held that absence of an allegation that a statement is

---

tion is public information. TEX. CODE CRIM. PROC. ANN. art. 62.09 (Vernon's Supp.2000).

7. Texas Transportation Code article 521.274 provides that "[t]he department [of public safety] by rule may provide that the holder of a driver's license may renew the license by mail, by telephone, over the internet, or by other electronic means." TEX. TRANSP. CODE ANN. § 521.274 (Vernon's 2000).

8. The court considers and weighs:

1. The private interest affected by government action;
2. The risk of an erroneous decision inherent in the procedure employed, along with the probable value of any additional or different procedural safeguard, and
3. The government's interest, including fiscal and administrative burdens involved in providing additional or substituted procedures.

*Mathews v. Eldridge*, 424 U.S. at 334–35, 96 S.Ct. 893.

"substantially false" is fatal to a claim under the Due Process Clause. *Id.* at 627, 97 S.Ct. 882. Governing circuit precedent also confirms that "the plaintiff must prove that the stigma was caused by a false communication." *Phillips v. Vandygriff,* 711 F.2d 1217, 1221 (5th Cir.1983). Finally, in *White v. Thomas,* 660 F.2d 680 (5th Cir.1981), the court concluded that an implied assertion that a statement is false may be sufficient to survive a motion to dismiss.

Unfortunately, research fails to disclose any definition of the term "substantially false." However, it is reasonable to view the concept as the flip side of the term "substantially true," which has a well-recognized meaning in defamation actions. The critical test in determining substantial truth of a defamatory statement is whether the statement as published would likely affect the mind of the reader or listener in a different manner than the actual misconduct proved. If the effect on the mind of the recipient would be the same, any variance between the misconduct charged and the misconduct proved should be disregarded. *Wehling v. Columbia Broadcasting System,* 721 F.2d 506 (5th Cir.1983)(citing *Shihab v. Express–News Corp.,* 604 S.W.2d 204, 208 (Tex.Civ.App.— San Antonio 1980), writ ref'd n.r.e.). Thus, to be substantially true, it is only necessary that a statement convey the same gist, substance or "sting." If such is the case, slight inaccuracies of expression are immaterial. *See, e.g., Jewell v. NYP Holdings, Inc.,* 23 F.Supp.2d 348, 366 (S.D.N.Y. 1998). As one court observed,

> When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done.

*Cafferty v. Southern Tier Publishing Co.,* 226 N.Y. 87, 93, 123 N.E. 76, 78 (N.Y. 1919).

■ Conversely, a statement need not wholly distort facts to be viewed as substantially false. Nevertheless, it must convey a dissimilar substance or gist so as to affect the mind of the reader or listener in a different manner than the actual conduct at issue. Thus, a substantially false statement contains substantial or sweeping inaccuracies, not merely semantic differences.

### 2. Serious Wrongdoing

■ The concept of serious wrongdoing is more easily grasped. A statement suggesting serious wrongdoing "must be worse than merely adverse; it must be such as would give rise to 'a "badge of infamy," public scorn, or the like.' " *Wells v. Hico ISD,* 736 F.2d 243 (5th Cir.1984), cert. denied, 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985).

### 3. Infringement of a More Substantial Interest

■ The second prong of the stigma plus infringement test is whether the stigmatizing conduct at issue will, with some degree of certainty lead to loss of or injury to a more tangible interest than damage flowing from injury to reputation. *See Marrero v. City of Hialeah,* supra. The most common example is injury to a constitutionally protected property interest. To qualify as such, an interest must be more than a unilateral expectation or abstract need or desire. Rather, it must constitute a legitimate claim of entitlement. *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. 2701. Entitlements stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions or mutually explicit understandings. *Perry v. Sindermann,*

408 U.S. 593, 599–601, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). They are not created by the Constitution, but are decided in reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). As succinctly stated in one Supreme Court case,

> "The hallmark of [constitutionally protected] property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"

*See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430–32, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982).

### C. Motions to Dismiss

The final principle for analysis concerns procedural standards by which motions to dismiss under FED. R. CIV. P. 12(b)(6) are judged. On a Rule 12(b)(6) motion, the court must decide whether the facts alleged, if true, would entitle plaintiff to some legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is proper only if there is either: (1) "the lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). The court also may "consider matters of which [it] may take judicial notice." *Id.* at 1017–18; *see* FED. R. EVID. 201(f). Matters of public record, items appearing in the record of the case, and exhibits attached to the complaint also may be considered. *See* 5A CHARLES ALAN WRIGHT AND ARUTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1990).

The court must accept as true all material allegations in the complaint as well as any reasonable inferences to be drawn from them. *See Kaiser Aluminum & Chem., Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). Moreover, well-pleaded facts must be reviewed in the light most favorable to plaintiff. *See Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir.1995). A plaintiff, however, must allege specific facts, not conclusory allegations. *See Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989). Conclusory allegations and unwarranted deductions of fact are not admitted as true. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum*, 677 F.2d at 1050. However, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." 2A MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.–5] at 12–91. 2 Moore's Federal Practice 3d ¶ 12.34(4)(a) at 12–72.7. Finally, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993).

## V. Discussion and Analysis

■ Persons convicted of military offenses must register as sex offenders in Texas only when their military offenses contain elements substantially similar to Texas offenses that require registration. Creekmore argues without opposition that determining whether elements of crimes are substantially similar is often a very

difficult exercise for trained lawyers and experienced judges. Yet, Texas specifies no process whatsoever by which military offenders are provided advance notice, opportunity to be heard, opportunity to be represented by counsel and an opportunity to present argument and evidence on that critical issue. Nor does Texas require that the decision maker on this difficult issue be either trained, professionally competent, or neutral. Obviously, the Texas scheme for dealing with military convicts is flawed and represents a constitutional due process miscarriage waiting to happen. The question, then, is whether the complaint here alleges facts sufficient to show that it may have occurred in this case.

The motions to dismiss center around the first analytical step, i.e., whether Creekmore's alleged facts implicate a protected liberty interest. All parties concur that the court must address this issue under the stigma plus infringement analysis discussed in the preceding section. Defendants primarily argue that Creekmore's complaint fails to satisfy the stigma prong because it does not adequately allege false stigmatizing statements.

## A. The Statements

Stigmatizing statements were made in several instances. First, they were made in writing when the Jefferson County sheriff's representative informed Creekmore of his duty to register. Second, they were made again when Creekmore eventually registered under protest. Third, they were made when local authorities provided community notification. Finally, they were made again when Creekmore's registration information was posted on the Texas Department of Public Safety's internet web site. For analytical purposes, however, all such statements can be grouped into three subject matter categories. The first statement triggered a duty to register in Texas.[9] The second statement precipitated a requirement to register in Texas for life.[10] The third statement obligated Creekmore to register in Texas every 90 days.[11] Consequently, the *substance* of the statements Creekmore alleges to be false are:

1. Creekmore's military offenses contain elements substantially similar to a Texas Penal Code offense listed in TEX.

---

**9.** Texas Code of Criminal Procedure article 62.02 provides that a person who has a reportable conviction or adjudication shall register with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days. A reportable conviction or adjudication means a conviction or adjudication, regardless of the pendency of an appeal, that is among other things, a conviction for a violation of section 21.11 (indecency with a child), 22.011 (sexual assault), 22.021 (aggravated sexual assault), or 25.02 (prohibited sexual conduct). *See* TEX. CODE CRIM. PROC. ANN. art. 62.01(5) (Vernon's Supp.2000).

**10.** Texas Code of Criminal Procedure article 62.12(a) provides that "[t]he duty to register for a person with a reportable conviction or adjudication for a sexually violent offense or for an offense under section 25.02, or

43.05(a)(2), Penal Code, ends when the person dies." TEX. CODE CRIM. PROC. ANN. art. 62.12(a) (Vernon's Supp.2000).

**11.** Texas Code of Criminal Procedure article 62.06(a) provides that "[a] person subject to registration under this chapter who has for a sexually violent offense been convicted two or more times, received an order of deferred adjudication two or more time, or been convicted and received order of deferred adjudication shall report to the local law enforcement authority with whom the person first registered not less than once in a ninety day period following the date the person first registered under this chapter and verify the information in the registration form maintained by the authority for that person." TEX CODE CRIM. PROC. ANN. art. 62.06(a) (Vernon's Supp. 2000).

CODE CRIM. PROC. ANN. art. 62.01(5)(A–D)(Vernon's Supp.2000);

2. One or more of Creekmore's military offenses is a reportable conviction or adjudication for a sexually violent offense; and

3. Creekmore has been convicted two or more times for a sexually violent offense.

### B. Creekmore's Allegations of Falsity

Creekmore argues that the first statement is substantially false for two reasons. First, he argues rhetorically that the statement is false per se because its truth has never been proven. Second, and more helpfully, he compares the elements of Creekmore's UCMJ offenses to the Texas Penal Code offense argued by defendants as having substantially similar elements.[12] He concludes that the elements are dissimilar because the UCMJ crimes specify as elements different *acts*, different *intent* and different *age* than the Texas Penal Code offenses. Consequently, he concludes that any assertion that the two offenses contain substantially similar elements is false.

Creekmore does not elaborate on why a statement that his military offenses were sexually violent offenses is false. This omission is presumed deliberate. First, it would be futile to argue otherwise. Moreover, if Creekmore's argument regarding the first statement is accepted, there is no valid basis to require his registration in Texas. If so, the question of whether he must register for life becomes moot.

Finally, Creekmore contends it is false to assert that he has been convicted two or more times for sexually violent crimes since those convictions occurred in the same court on the same day. Creekmore contends that the Texas requirement to register every 90 days upon being convicted two or more times for sexually violent crimes is akin to enhancement of punishment. Creekmore relies on Texas law holding that multiple convictions in the same court on the same day and in the same proceeding constitute a single conviction for enhancement purposes.

### C. Application

■ The ultimate inquiry is not whether Creekmore's UCMJ offenses have elements substantially similar to a listed Texas Penal Code offense. Rather, the determinative question is whether plaintiff's complaint alleges that defendants made substantially false statements. Ironically, however, the court—in determining whether defendants statements are substantially false—must focus on the same basic questions that would have been addressed in the first instance had Creekmore been afforded an administrative due process hearing with notice, opportunity to be heard and present evidence, etc. For if—despite affording no process whatsoever—defendants correctly concluded that Creekmore's military offenses contain substantially similar elements to listed Texas offenses, their assertions to that effect are not substantially false. Similarly, if the defendants correctly decided that Creekmore's military offenses requiring registration in Texas were sexually violent and that he was convicted two or more times of sexually violent offenses, their statements to such effect are not substantially false.

#### 1. Were Elements of Offenses Substantially Similar?

The Texas Penal Code offense which defendants regard as having substantially

---

**12.** The Texas Penal Code offense is Indecency With a Child, Texas Penal Code § 21.11(a)(1).

similar elements is "Indecency with a Child," proscribed in TEX. PENAL CODE ANN. § 21.11(a)(1)(Vernon's 2000).[13] Creekmore's UCMJ offenses are "Indecent Acts with a Child" and "Indecent Assault" under UCMJ art. 134 (2000),[14] with specific elements delineated in the MANUAL FOR COURTS-MARTIAL, Pt. IV, para. 87[15] and Pt. IV, para. 63[16] (2000) respectively. The elements of these offenses are summarized and compared in tabular form:

| | Indecency with a Child [Texas Penal Code] | Indecent Acts or Liberties w/Child [UCMJ] | Indecent Assault [UCMJ] |
| --- | --- | --- | --- |
| Act: | "Sexual Contact" (Touching anus, breast or any part of genitals of another person). | "Indecent Act" (Touching another person anywhere in manner signifying sexual impurity and tending to excite lust and deprave morals regarding sexual relations). | "Indecent Assault" (Touching another person anywhere in manner signifying sexual impurity and tending to excite lust and deprave morals regarding sexual relations through unlawful force or violence). |
| Intent: | Arouse or gratify sexual desire of any person. | Arouse, appeal to, or gratify lust, passions or sexual desires of accused, victim or both. | Gratify lust or sexual desires of the accused. |
| Age: | Under 17 years and not spouse of accused. | Under 16 years and not spouse of accused. | Any age and not spouse of accused. |

Under applicable standards, the pertinent inquiry is not whether there are per-

13. Indecency With a Child

    (a) A person commits an offense if with a child younger than 17 years and not his spouse, whether the child is the same or opposite sex, he:

    1. engages in sexual contact with the child; or

TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon's 2000). "Sexual contact means any touching of the anus, breast, or any part of the genitala of another person with the intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE ANN. § 21.01(2) (Vernon's 2000).

14. The Uniform Code of Military Justice is codified at 10 U.S.C. §§ 801–946.

15. The elements of the offense of Indecent Acts with a Child are:

    1) The accused committed an indecent act upon or with the body of a child;

    2) The child was under sixteen years of age;

    3) The child was not the spouse of the accused;

    4) The accused committed the indecent act with intent to arouse, appeal to, or gratify the lust, passions, or sexual, desires of the accused, the child, or both; and

    5) Under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MANUAL FOR COURTS-MARTIAL, Pt. IV, para. 87.

16. The elements of the offense of Indecent Assault are:

    1. The accused touched or offered to touch the victim;

    2. The touching or offer to touch was indecent;

    3. The victim was not the spouse of the accused;

    4. The accused acted with intent to gratify the lust or sexual desires of the accused; and

    5. Under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MANUAL FOR COURTS-MARTIAL, Pt. IV, para 63.

ceptible differences in how the two governing bodies define elements of the subject crimes. Rather, it is whether such differences are so weighty and appreciable as to render the offenses not substantially similar. For reasons discussed below, this question is answered in the negative.

First, when considering sex offenses, whether a child is defined as being under 16 years of age or under 17 cannot plausibly be argued as a monumental disparity. The substantial similarity between the age elements is apparent when one considers that engaging in prohibited conduct with persons age 1 though 15 and not one's spouse is an offense under both codes. The minor differences between Texas' Indecency with a Child crime and the UCMJ's Indecent Acts or Liberties with a Child offense regarding the upper age limit do not render the age elements substantially dissimilar.

Next, the intent element of all three offenses requires proof of intent to "gratify sexual desire." Other differences regarding "arouse", "lust" and "passions" are semantic variances at best. Similarly, differences regarding whose sexual desire must be gratified, i.e., "any person", "accused" or "accused, victim or both", do not fundamentally alter the core concept. Therefore, the intent element differences between Texas' Indecency with a Child statute and the UCMJ's Indecent Acts or Liberties with a Child and Indecent Assault do not render the elements substantially dissimilar.

The final comparison concerns proscribed acts. The Texas statute prohibits certain specific acts. UCMJ describes prohibited conduct in broad descriptive terms relating to public morality. UCMJ standards are more vague and subjective, but they inevitably encompass the same conduct that Texas law more precisely bans. Under these circumstances, the court again concludes that the differences between Texas's Indecency with a Child statute and the UCMJ's Indecent Acts or Liberties with a Child and Indecent Assault with respect to prohibited conduct do not render elements of the two offenses substantially dissimilar.

The UCMJ offense of Indecent Assault has no age requirement, and also imposes an additional element of unlawful force or violence. Consequently, there are greater differences between elements of that offense and those of the Texas Indecency with a Child offense. Nevertheless, these differences again do not compel the conclusion that the elements are substantially dissimilar. There need not be complete unanimity of elements. Both statutes prohibit the same lascivious conduct and require the same intent. Sexual contact with another person not one's spouse and who cannot understand or consent is fundamentally indecent, no matter what one's age, and it is necessarily assaultive when the perpetrator is an adult and the victim is a child, whether or not physical force is used or threatened. Thus, the absence of an age requirement and the addition of an unlawful force element for the UCMJ indecent assault offense do not render its elements substantially dissimilar.[17]

Creekmore fails to satisfy the falsity component of the stigma prong of the stig-

---

17. A contrary conclusion would have no practical effect. Even if defendants incorrectly determined that Creekmore's UCMJ offense for indecent assault had substantially similar elements, Creekmore's registration obligations would not be altered. Creekmore's UCMJ convictions for Indecent Acts with a Child trigger his duty to register as a sex offender in Texas. Committing a single sexually violent offense causes one to register for life. As discussed in the next section, an offense with elements similar to Indecency with a Child under Texas law constitutes a sexually violent offense.

ma plus infringement analysis with regard to defendants' statements that he committed military offenses with elements substantially similar to listed Texas Penal Code offenses.

### 2. Were UMCJ Crimes Sexually Violent?

When defendants declare that Creekmore must register in Texas as a sex offender for life—as opposed to ten years—they state in effect that he was convicted of a sexually violent offense. *See* TEX. CODE CRIM. PROC. ANN. art. 62.12(a) (Vernon's Supp.2000). In the preceding section, the court determined that Creekmore's military offenses were substantially similar to the Texas crime of Indecency with a Child. The Texas Program specifically declares that Indecency with a Child is a sexually violent offense. *See Id.*, at § 62.01(6). Moreover, indecency with a child involving sexual contact is a crime of violence for purposes of 18 U.S.C. § 16.[18] *See United States v. Velazquez–Overa*, 100 F.3d 418 (5th Cir.1996). An assault, by its nature, is a crime of violence. Given these circumstances, defendants again did not make a substantially false statement when declaring that Creekmore was required to register as a sex offender in Texas for life.

### 3. Was Creekmore Convicted Two or More Times?

As discussed in the preceding section, committing a reportable sexually violent offense triggers a lifetime obligation to register annually as a sex offender in Texas. However, committing such offense two or more times requires registration every 90 days. *See* TEX. CODE CRIM. PROC. ANN. § 62.06(a)(Vernon's Supp.2000). Defendants require Creekmore to register every 90 days. Thus, in effect they state he has been convicted two or more times for sexually violent offenses.

Creekmore literally has been convicted of five sexually violent offenses. However, each conviction occurred at the same time, in the same military court and in the same case. Creekmore has been punished only once and served only one sentence. When such circumstances exist in Texas criminal cases, the multiple convictions merely count as one conviction, so that a subsequent conviction may be punished only as a second conviction. *See Ex parte Atkinson*, 162 Tex.Crim. 546, 288 S.W.2d 89 (1956); *Ex parte Huff*, 166 Tex.Crim. 508, 316 S.W.2d 896 (1958).

Legislative history reveals nothing regarding lawmakers' intent in enacting Section 62.06(a).[19] A natural reading of that provision, however, suggests that the Texas legislature intended to intensify reporting requirements for repeat offenders or recidivists. If that be the case, declaring Creekmore as twice-convicted of a sexually violent offense is not an immaterial or slight distortion, but rather a sweeping inaccuracy that conveys a dissimilar substance or gist so as to affect the mind of

---

**18.** Title is, United States Code, Section 16 provides:

The term "crime of violence" means—
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person

or property of another may be used in the course of committing the offense.
18 U.S.C. § 16.

**19.** Enhanced registration for twice-convicted sex offenders is part of federal guidelines for approved state programs. *See* 42 U.S.C. § 14071(b)(6)(E)(i). It is, therefore, reasonable to assume that the provision is contained in Texas law principally to insure continued federal certification.

the reader or listener in a different manner than the actual misconduct.

Creekmore's point is at least arguable, and construing the circumstances most favorably to him—as the court must do when determining a motion to dismiss—one cannot conclude beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

In sum, Creekmore satisfies the falsity component of the stigma prong of the stigma plus infringement test by alleging and showing that defendants declared that he has been convicted two or more times for sexually violent offenses.

### 4. Serious Wrongdoing?

As noted earlier, the stigma prong requires two showings, viz., a *false statement* asserting *serious wrongdoing*. No defendant argues that statements accusing a person of committing sex offenses and violent sex offenses against a helpless child do not assert serious wrongdoing. Sex offenders are universally regarded with contempt. There can be no doubt but that defendants' statements saddle Creekmore with a badge of infamy, public scorn, or the like. Thus, Creekmore has completely satisfied his pleading obligations regarding stigma.

### 5. Loss of More Tangible Interest?

Having satisfied the stigma prong, Creekmore must also meet the infringement prong. Thus, he must allege and be prepared to show that defendants' stigmatizing conduct at issue will, with some degree of certainty lead to loss of or injury to a more tangible interest than merely damage flowing from injury to reputation. *See Marrero v. City of Hialeah,* supra.

Creekmore alleges the loss of several interests that he argues are more tangible than damages flowing from injury to reputation. *See supra* Section III., page 7.

Assuming arguendo that each claimed interest suffices as a "more tangible interest," Creekmore nevertheless fails to state a claim upon which relief may be granted. None of these claimed interests is adversely affected by Creekmore's obligation to register every 90 days. They are instead precipitated solely by his duty to register due to a reportable UCMJ conviction for a sexually violent offense. Thus, as a matter of law the false statements do not affect a more tangible interest than reputation alone.

In sum, with regard to the statement that Creekmore is required to register every 90 days because he was convicted two or more times for sexually violent offenses, plaintiff satisfies the stigma prong. He fails, however, to satisfy the infringement prong because he identifies no interest more tangible than reputational damage that is adversely affected by the statement at issue.

### VI. Conclusion

Affording no process whatsoever, defendants declared that Creekmore's military convictions were offenses containing elements substantially similar to Indecency with a Child under the Texas Penal Code. That declaration forced Creekmore to register as a sex offender in Texas. In similar fashion, defendants stated that Creekmore's military convictions were for sexually violent offenses and constituted two or more convictions for purposes of enhanced registration. All three statements seriously and adversely affect Creekmore.

For the most part the defendants guessed correctly, and therefore are not guilty of making a false defamatory statement. While they did falsely state that plaintiff was convicted two or more times for a sexually violent offense, their mistake does not affect a more tangible interest or

entitlement protected by the Constitution. Thus, Creekmore fails to state a procedural due process claim upon which relief can be granted.